IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAMON CLARK, #K03716 | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 20-cv-1221--RJD |
| | ) |
| VIPIN SHAH, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, formerly incarcerated within the Illinois Department of Corrections, filed this lawsuit pursuant to 42 U.S.C. §1983. He alleges that from July 2018-July 2020 at Robinson Correctional Center, Dr. Vipin Shah was deliberately indifferent to his severe pain caused by a testicular cyst. Doc. 8. Plaintiff's Complaint contains one Eighth Amendment claim against Dr. Shah. *Id*. This matter comes before the Court on Defendant's Motion for Summary Judgment (Docs. 30 and 31). Plaintiff filed a Response (Doc. 38). As explained further, Defendant's Motion is DENIED.

**Material Facts**

Plaintiff transferred to Robinson Correctional Center on July 25, 2018. Doc. 31-3, p. 7. On that date, Plaintiff told a nurse that he had "extreme testicular pain." *Id*., p. 13. One or more nurses told Plaintiff that he would see Dr. Shah within three days. *Id*. Over the next 35 days, Plaintiff spoke to several nurses who told him, "…you're on a list. We're behind right now. Just be patient." *Id*., p. 17. On August 30, 2018, Plaintiff told Dr. Jackson (another provider at

Robinson) that he had not yet seen Dr. Shah.  *Id*., pp. 19-21.  Dr. Jackson arranged for Plaintiff to see Dr. Shah that day.  *Id*.  In the exam room, Dr. Shah refused to examine Plaintiff and told him, "I don't take referrals from [Dr. Jackson]….[g]et out of my office and go put in for sick call."  *Id*., p. 20.

Plaintiff then saw Dr. Shah on September 7, 2018.  Doc. 31-1, ¶9; Doc. 31-3, p. 22.  Plaintiff complained of testicular pain, and told Dr. Shah, "I've been dealing with this issue for several years.   I've been taking pain medication, antibiotics, for years. It hasn't been working…an ultrasound was performed" but it did not show "what was causing the pain."  Doc. 31-3, p. 22-24.  Dr. Shah looked at Plaintiff's records and said, "you've already been seen about this…it's just a benign condition…I'm just going to continue your pain medication and antibiotics."  *Id*., p. 25.  Dr. Shah recommended that Plaintiff drink more water, take Mobic (a non-steroidal anti-inflammatory pain medication), and return in four weeks for re-evaluation.  Doc. 31-1, ¶10.

Plaintiff does not remember whether Dr. Shah examined him on September 7, 2018.  Doc. 31-1, p. 26.  He remembers Dr. Shah examined him "three, maybe four times" during the relevant time period at Robinson but does not remember the dates.  *Id*., p. 51.

Plaintiff returned to see Dr. Shah approximately seven weeks later for "jock itch and testicular pain."  Doc. 31-3, p. 30.  Dr. Shah testified in his declaration that he thought excessive scratching and touching related to the jock itch was irritating Plaintiff's testicles.  Doc. 31-1, ¶13.  Dr. Shah ordered antifungal cream and corticosteroid cream for the jock itch and told Plaintiff to drink more water because his urine test results indicated that he was dehydrated.  *Id*.  Dr. Shah ordered a six-month supply of Mobic for Plaintiff, even though Plaintiff told Dr. Shah that Mobic provided him no relief.  *Id*.; Doc. 31-3, p. 30.  Plaintiff recalls Dr. Shah saying, "you just got jock itch….like I told you before, you don't have---there's nothing wrong with your testicles.

You just have a benign condition." Doc. 31-3, p. 31.

Plaintiff then saw Dr. Shah again in late December 2018. Doc. 31-1, ¶15. Dr. Shah testified in his declaration that he thought the rash in Plaintiff's groin area was improving, and that Plaintiff's cyst was not tender or swollen. *Id*. Dr. Shah increased Plaintiff's antifungal and corticosteroid cream to two times daily (as opposed to once daily), and recommended that Plaintiff continue taking Mobic. *Id*. Dr. Shah's "theory was that when the rash was more fully resolved, the testicular pain would be reduced." *Id*.

When asked at his deposition whether he remembered any details from the December 2018 visit, Plaintiff gave the following testimony:

> It was just the same. It was the same issues. I would tell him my condition. He would tell me nothing is wrong with me. He would dispute that I was in pain because he would always say, well I evaluated you, I've done many evaluations. I gave you pain medications. There is nothing else that I can do….You just have to deal with it. It got to a point he would tell me consistently you just have to deal with it….It's a condition that you have to deal with for the rest of your life.

Doc. 31-3, p. 38.

Plaintiff also testified that between December 2018 and May 2019, his rash did not resolve. *Id*., p. 41. Dr. Shah states in his declaration that after the December 2018 visit, Plaintiff "stopped approaching me with complaints about his testicles for approximately four months. At that time, in January through April 2019, it appeared that the treatment of his rash had had the desired effect of reducing disturbance of his testicles, thereby reducing his irritation and pain." Doc. 31-1, ¶16. Plaintiff testified that the reason he did not request to be seen for the cyst and/or rash from January-April 2019 was because the nurses told him "if he is not going to treat you, you said nothing works, then it doesn't make sense to keep putting in nurse sick call." Doc. 31-3, p. 43-44. From January through March 2019, Plaintiff also did not fill his Mobic prescription because it did not alleviate

his pain, and Dr. Shah and the nurses told him not to take it if it was not effective. *Id.*, p. 42-43.

Plaintiff saw Dr. Shah on nine occasions from May 2019-December 2019. Doc. 31-1, ¶¶18, 20, 21, 23, 26, 27, 29, 31, 33. In his declaration, Dr. Shah testifies that on three of those occasions, Plaintiff did not complain of testicular pain. Doc 31-1, ¶¶18, 20, 21. Plaintiff testified that his testicular pain was discussed at every single visit with Dr. Shah. Doc. 31-3, p. 59. Dr. Shah would tell him "listen, I told you you just have to deal with it." *Id.*, p. 59.

Dr. Shah's notes reflect that rashes appeared on multiple areas of Plaintiff's skin from May-December 2019. Doc. 31-1, ¶¶18, 21, 23, 29, 33. Dr. Shah performed a "punch biopsy" to obtain a sample of skin from Plaintiff's foot "to test for use in diagnosing the rash." *Id.*, ¶23; Doc. 31-1, p. 57. The results were inconclusive. Doc. 31-1, ¶24.

Dr. Shah also ordered multiple blood tests in May and December 2019, partly because in May 2019 Plaintiff complained of fatigue and Dr. Shah wanted to determine whether the fatigue was related to a vitamin deficiency or "another condition requiring treatment." Doc. 31-1, ¶¶18, 31. A blood test performed on May 17, 2019 indicated that Plaintiff had "deficient levels of vitamin B12." *Id.*, ¶18. Dr. Shah ordered vitamin B12 supplements. *Id.*

From May-December 2019, Dr. Shah ordered a variety of creams and medications to treat Plaintiff's rashes; these creams and medications included antiobiotic, antifungal, anti-parasitic, and steroid treatments. Dr. Shah "was hoping to repeat the success in reducing his [rash] as we had in the first four months of 2019." *Id.*, ¶31. Plaintiff recalls that when he would try to talk to Dr. Shah, it would be "the same narrative, the same issues." Doc. 31-3, p. 63-64. Plaintiff explained the "narrative" as follows:

> I talked to him about the testicular pain. And he told me there's nothing I can do. So we're just going to focus on your skin rashes, because I want to know what's going on and causing this. So he tried to put me on some antibiotics….every time I got an antibiotic, this

> is the strongest antibiotic in known existence. Take this and it will knock this out and get rid of this. And again, I get another, this is the strongest, stronger than that. This [is] the strongest antibiotic. It's going to get rid of this. So that became the narrative. This pain medication is better than this one and it will get rid of it. This antibiotic is better than this and it will get rid of it. None of it worked. And I consistently told him none of it worked, but they kept giving it to me.

*Id.*, p. 60-61.  Plaintiff did not present to nurse sick call or Dr. Shah from December 28, 2019 through May 2020 for rash or testicular pain because, "at some point Dr. Shah kept telling me over and over and over again there's nothing we can do. There's nothing I can do about this. And you just have to deal with it….[i]t makes no sense if you keep putting in and this man is telling you there's nothing he's going to do." Doc. 31-1, p. 64.

Plaintiff continued to complain to the nurses, as well as the healthcare administrator; he also followed the prison grievance process. Doc. 31-3, pp. 64-65, 69. Dr. Shah saw Plaintiff on May 11, 2020, after the healthcare unit administrator informed him that Plaintiff submitted "a grievance complaining about [Dr. Shah's] treatment of [Plaintiff's] testicular pain." Doc. 31-1, ¶35. Dr. Shah "assessed that the testicular pain was likely due to inflammation of the tissue in the testicle and that it had not been resolved by prior medications." *Id.*, ¶36. Plaintiff underwent an ultrasound in June 2020 and saw a urologist in July 2020. *Id.*, ¶¶38, 41. The urologist recommended surgical removal of the epididymis (a tube at the back of the testicle). *Id.*, ¶41. Dr. Shah was responsible for obtaining approval from Wexford Health Sources, Inc. (Dr. Shah's employer and the healthcare provider for the Illinois Department of Corrections) for the ultrasound, urology consult, and surgery. *Id.*, ¶¶37, 40, and 42. Plaintiff alleged in his Complaint that the surgery occurred on September 1, 2020. Doc. 1, p. 7-8. Plaintiff's pain resolved after he recovered from the surgery. Doc. 31-3, p. 93.

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Brown v. Osmundson*, 38 F. 4th 545, 559-60 (7th Cir. 2022) (internal citations omitted). To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial" that shows (1) "he had an objectively serious medical need" (2) "which [Dr. Shah] "[knew] of and disregar[ded] a substantial risk of harm." *Id*. at 550. Persisting in an ineffective course of treatment may constitute deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment

that they know is ineffective").

      Dr. Shah has failed to meet his burden of establishing that no reasonable jury could find in Plaintiff's favor.  Dr. Shah contends that the medical records and his own declaration establish that he was not deliberately indifferent to Plaintiff's complaints of testicular pain.  Dr. Shah's argument is unpersuasive, however, because the records and his declaration are contradicted by Plaintiff's deposition testimony on material issues.  For example, Dr. Shah testifies in his declaration that he thought Plaintiff's testicular pain resolved (and therefore treatment had been effective) during the 4–5-month time periods when Plaintiff would not request to be seen for his testicular pain.  A jury could infer that this testimony is not credible because, as Plaintiff testified, Dr. Shah told him on multiple occasions there was nothing he (Dr. Shah) could do regarding the pain and Plaintiff would just have to "deal with it."  Credibility issues cannot be resolved on summary judgment.  Moreover, the jury could infer from Plaintiff's testimony that Dr. Shah refused to address Plaintiff's complaints of pain.

      The Court acknowledges that Dr. Shah tried many different types of medication and creams to address Plaintiff's rash, and understands Dr. Shah's statement in his declaration that he thought alleviating the rash would alleviate the testicular pain.   Again, however, a jury could infer that Dr. Shah did *not* think alleviating the rash would alleviate the testicular pain based upon Plaintiff's testimony that Dr. Shah said Plaintiff would just have to "deal with it for the rest of [his] life." Moreover, Plaintiff testified that he told Dr. Shah that prior doctors had tried the same courses of treatment (e.g., antibiotics) and they were not effective.  Plaintiff also testified that he told Dr. Shah that Mobic was not effective, yet Dr. Shah still prescribed it for him.  Plaintiff's testimony creates a genuine issue of material fact regarding whether Dr. Shah persisted in an easier course of treatment that he knew was ineffective.

After approximately two years, Dr. Shah recommended that Plaintiff see the urologist and ultimately, Plaintiff underwent surgery that alleviated his pain.  Dr. Shah can be found liable under the Eighth Amendment for delaying Plaintiff's urology consultation and surgery if the delay unnecessarily prolonged Plaintiff's pain.  *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015) (internal citations omitted).  Considering that Dr. Shah spent nearly two years attempting to resolve Plaintiff's rashes without otherwise addressing Plaintiff's testicular pain, the jury could find that Plaintiff's pain was unnecessarily prolonged.

In sum, whether Dr. Shah violated Plaintiff's Eighth Amendment rights is a question for the jury.  Defendant's Motion for Summary Judgment (Doc. 30) is DENIED.  This case will now proceed to trial.

**IT IS SO ORDERED.**

**DATED: September 20, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**